2019 IL App (1st) 171884-U

No. 1-17-1884

Order filed December 6, 2019

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 12 CR 20402 |
| ALEJANDRO ESCOBAR, | ) ) | Honorable Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CONNORS delivered the judgment of the court.
Justices Cunningham and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The summary dismissal of defendant's postconviction petition is affirmed over his contention that the trial court violated his due process rights by penalizing him for proceeding to trial prior to pleading guilty.

¶ 2    Defendant Alejandro Escobar appeals from the summary dismissal of his *pro se* petition

for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*

(West 2016)). He contends that the trial court erroneously dismissed his petition where he stated

an arguable claim that his due process rights were violated because the court imposed a harsher

sentence than was previously offered as punishment for proceeding to a jury trial prior to pleading guilty. For the following reasons, we affirm.

¶ 3     Defendant was charged with two counts of attempted first degree murder and two counts of leaving the scene of a motor vehicle accident involving personal injuries. The charges stemmed from an October 7, 2012, hit-and-run, during which defendant struck two men with his vehicle, reversed, and ran the men over several more times. One of the men, Ezekial Medina, spent over a month at the hospital as a result of the accident and sustained various injuries, including a collapsed lung, an injured spleen, a fractured clavicle, multiple rib fractures, facial fractures, and a large hematoma to his head. Medina also required emergency surgery to remove his spleen. Defendant fled the scene and was arrested approximately five days later, never having filed a police report.

¶ 4     The record shows that on August 15, 2014, defendant's case was set for a jury trial. Defense counsel requested a "conference" with the court. The court stated it would conduct a conference after other cases had finished. The court then passed defendant's case.

¶ 5     When the case was recalled, defense counsel informed the court that someone was bringing defendant's civilian clothes for trial and was "five minutes away." The court responded, "Well, we don't wait. Time waits for no man." The court noted on the record that it was approximately 2 p.m., and that they had been waiting for the person to bring defendant's clothes for "roughly" five or six hours. The sheriff then brought the jury into the court room. The court addressed the jury, introduced the parties, and explained the indictment and general trial instructions. While instructing the jury, the court stated, "You look here today, the defendant is wearing orange. And I think one could guess, probably, that he's been incarcerated in the period of time before this trial. You can't consider that in any way in reaching your verdict." Following the instructions, the court

conducted *voir dire* and the jury was selected. The court informed the venire which members were selected to serve and recessed for the weekend.

¶ 6       On August 18, 2014, the court called defendant's case and immediately stated,

> "I did indicate that if you would plead guilty to Count 1 in the case I'd sentence you to nine years in the Illinois Department of Corrections, with three years Mandatory Supervised Release, that's a 85 percent case, credited for all the days he's been in. *** [Defendant], you are accepting the offer and pleading guilty, is that right?"

Defendant acknowledged that he wished to plead. The court admonished him regarding the rights he gave up by pleading guilty and that attempted murder, a Class X offense, had a sentencing range of 6 to 30 years' imprisonment. Defendant acknowledged that he understood the admonishments, was pleading guilty of his own free will, and was not threatened or promised anything in exchange for his guilty plea. The court found that the State provided a sufficient factual basis for the plea and that defendant was pleading freely and voluntarily and understood the nature of the charges and possible penalties.

¶ 7       When given the opportunity to speak, defendant stated, "It was an accident. I have a background and I know that, you know, I wouldn't be judged nor sentenced based on the evidence of the case. And a fear of the threats of the sentence I would receive if I go to trial." The court responded, "You don't want to enter this plea you don't have to." Defendant then apologized to his wife, his friends, the court, and the victims. The court sentenced defendant to nine years' imprisonment for attempted murder.

¶ 8       The court twice admonished defendant of his appellate rights. The following colloquy then occurred:

"THE COURT: The long and short of it, [defendant], let's cut to the chase, if you did file a motion to withdraw, if you are inclined to file a motion to withdraw, I would encourage you to do it now. I'm giving you one last chance to reconsider what you want to do, talk to your attorney but if you do file a motion to withdraw your plea, you'd be eligible for any sentence you originally could have received, could be up to 30 years on either one of these cases, based on your background. Do you wish to plead guilty?

[DEFENDANT]: Go ahead, I plead guilty."

¶ 9    On September 11, 2014, defendant filed a *pro se* "motion for reduction of sentence." The motion consisted of a coversheet; defendant's affidavit, stating the contents of the motion were accurate; a proof of service; and a form that gave general directions regarding motions to reduce sentences. In the motion, defendant did not list his reasons for seeking a sentence reduction or any information specific to his case.

¶ 10   On November 13, 2014, at the hearing on the motion to reduce his sentence, defendant informed the court he was "asking for the eight [year sentence]." The following exchange occurred:

"THE COURT: The plea was to nine. That was the offer that was made. If you don't want it, that's fine. Then we can address this as a motion to reduce your sentence. You can withdraw this motion.

\* \* \*

You always had a choice. If you want to withdraw your plea right now, you can. And then you'd be back up to facing whatever the -- you know, I seem like you're quoting something I said here.

The reality is, you could receive any sentence up to 30 years at 85 [percent]. Or, if you're convicted just of leaving the scene of a personal injury accident, I believe the limits, because of your background, would also be 30 years, up to 50 [percent].

* * *

[DEFENDANT]: Your Honor, the -- my whole thing that I was trying to put in there because -- was just that the original oral agreement was for eight --

THE COURT: Yeah, but then you didn't want it me [*sic*] and you asked me to pick a jury and the circumstances changed. And that's not uncommon, [defendant]. I treated you fairly.

[DEFENDANT]: You did, your Honor. And the only thing I was -- the only problem I had was that when the jury seen me in the jail clothes, and then --

THE COURT: If you want to withdraw your plea, you can do right now. You'd be back up to the circumstance you're in.

The jail clothes weren't here; I have to move forward with cases. I've had juries that acquitted people when the defendant appeared in jail clothes. It's of no consequence.

If you want another jury trial, you can withdraw this plea right now and you can be back up to facing 30 years at 85 [percent].

* * *

The question is, how do you want to proceed? I've told you that the sentence that I thought was appropriate was nine. You could have received up to 30. It's your choice of how you want to proceed. Take a minute and talk to [defense counsel]."

¶ 11    After allowing defendant time to speak with counsel, the court confirmed with defendant that he did not wish to withdraw his plea. Defense counsel stated,

> "He is asking that the Court *** turn the clock back, in essence to before the jury was selected and to give the eight that was discussed prior to that point.
>
> [The COURT]: That had been a different negotiation.
>
> * * *
>
> We were in a different situation, and I'm going to deny your motion to reduce your sentence, respectfully [defendant]."

¶ 12    The State nolled the remaining charges. Defendant filed a notice of appeal on November 14, 2014, and the Office of the State Appellate Defender (SAD) was appointed. On December 18, 2014, the clerk of the circuit court received defendant's *pro se* "motion for reconsideration to reduce sentence." The court denied the motion. We allowed defendant's motion to dismiss his direct appeal. *People v. Escobar*, No. 1-14-3768 (May 27, 2016) (dispositional order).

¶ 13    On May 1, 2017, defendant filed the instant *pro se* postconviction petition under the Act. In his petition, defendant argued, in relevant part, that the trial court violated his 8th and 14th amendment rights by "forcing [him] to accept a plea agreement with an extra year for not going through with a trial." Defendant acknowledged that he rejected an offer for an eight-year sentence and decided to proceed with a jury trial. During *voir dire*, the jury saw defendant in his "Cook County issued brown uniform," which violated his right to a fair and impartial jury. Defendant "took this error as a sign and requested to accept the eight-year plea agreement." According to defendant, the trial court "denied" the eight-year offer, "stating that the situation is different" and changed the offer to nine years "for wasting the court's time." Defendant argued the court erred

by allowing the jury to see him in his Illinois Department of Corrections uniform and then penalizing him for "exercising his constitutional right to proceed with a trial or accept a plea offer." He requested that the court reduce his sentence by one year.

¶ 14   Defendant attached to his petition his mittimus and a transcript from the November 13, 2014, hearing on his motion to reduce his sentence. He also provided an affidavit, averring that the contents of his petition were true and correct to the best of his knowledge.

¶ 15   On June 23, 2017, the trial court summarily dismissed defendant's petition in a written order, finding his claim frivolous and patently without merit. The court found, in relevant part:

> "[Defendant] does not remain indefinitely entitled to his initial plea offer. Once [defendant] rejected that offer and chose to proceed to a jury trial, that offer was no longer on the table. When [defendant] requested to enter into a plea agreement after jury selection had already begun, the circumstances had changed from what they had been when the initial offer was made."

¶ 16   On appeal, defendant contends the trial court violated his constitutional right to due process by sentencing him to a nine-year sentence as punishment for temporarily exercising his right to stand trial prior to pleading guilty.[1]

¶ 17   The Act provides for a three-stage process by which a defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008); see also 725 ILCS 5/122-1(a)(1) (West 2016) (requiring a person instituting a proceeding under the Act to assert a "substantial denial of his or her rights under the Constitution

---

[1] On July 30, 2019, while this appeal was pending, we granted defendant's motion for an appeal bond.

of the United States or the State of Illinois or both"). The plain language of the Act limits review only to "constitutional questions and the denial of constitutional rights." *People v. Hartman*, 408 Ill. 133, 137 (1951). To survive the first stage, a petition need only present the gist of a constitutional claim. *People v. Allen*, 2015 IL 113135, ¶ 24. At the first stage, the trial court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). Where a petition attaches a constitutional label to allegations that do not raise a constitutional issue, dismissal is mandatory. *People v. Flores*, 153 Ill. 2d 264, 278 (1992). We review the summary dismissal of a petition *de novo* (*Hodges*, 234 Ill. 2d at 9), and therefore, we may affirm on any basis supported by the record (*People v. Miranda*, 2018 IL App (1st) 170218, ¶ 22).

¶ 18    After a review of the record, we find that the court did not err in dismissing defendant's petition because he did not assert a constitutional violation as required by the Act. See 725 ILCS 5/122-1(a)(1) (West 2016)). In the context of guilty pleas, due process requires that all pleas be knowing and voluntary, or, stated differently, entered with full knowledge of the consequences. *People v. Whitfield*, 217 Ill. 2d 177, 200 (2005). Illinois Supreme Court Rule 402 requires that before accepting the plea, the court must admonish defendant regarding the nature of the charge, the minimum and maximum sentence, the right to plead not guilty, and the waiver of his right to a trial. Ill. S. Ct. R. 402(a) (eff. July 1, 2012); *People v. Marshall*, 381 Ill. App. 3d 724, 732 (2008). The court must also determine that the plea is voluntary by stating the terms of the plea agreement and defendant must accept those terms in open court. Ill. S. Ct. R. 402(b) (eff. July 1, 2012); *Marshall*, 381 Ill. App. 3d at 732. "Where the trial record refutes [a] defendant's assertions that

his plea was not knowingly and voluntarily entered, courts may properly dismiss or deny a defendant's [postconviction] petition." *Marshall*, 381 Ill. App. 3d at 732.

¶ 19    In his petition, defendant did not dispute that he knowingly and voluntarily pled guilty with full knowledge of the consequences. *Whitfield*, 217 Ill. 2d at 200. As such, he effectively did not assert a violation of his constitutional right to due process. Rather, without moving to withdraw his plea, defendant essentially attempted to use the Act to secure an eight-year sentence which in his petition he acknowledged he had previously rejected. As mentioned, the Act provides for a process by which a defendant may assert that there was a substantial denial of his constitutional rights "in the proceedings that resulted in" his conviction. 725 ILCS 5/122-1(a)(1) (West 2016). Here, the proceeding which resulted in defendant's conviction was a plea agreement. Defendant did not claim that his plea was not knowingly and voluntarily entered such that his constitutional rights were violated. Accordingly, the court did not err in dismissing his petition.

¶ 20    In reaching this conclusion, we briefly note that, even assuming *arguendo*, that defendant asserted a constitutional violation, his claim that the court forced him to plead guilty is without merit because it is completely contradicted by the record. The record shows that the court properly admonished him regarding the nature of the charge, the minimum and maximum sentence, the right to plead not guilty, and the waiver of his right to a trial. Ill. S. Ct. R. 402(a) (eff. July 1, 2012); *Marshall*, 381 Ill. App. 3d at 732. Defendant acknowledged that he was pleading guilty of his own free will and the court determined that he was pleading freely and voluntarily and understood the nature of the charges and possible penalties. Given this record, even if defendant had asserted a constitutional violation, the court did not err in dismissing his petition. *Hodges,* 234 Ill. 2d at 11-

12 (A petition may be summarily dismissed as frivolous or patently without merit when it is based on an indisputably meritless legal theory, such as one completely contradicted by the record).

¶ 21    In his brief, defendant nevertheless argues that his right to due process was violated because the court imposed a harsher sentence than was originally offered. In setting forth this argument, defendant attempts to frame it as a "trial tax" issue. See *People v. Carroll*, 260 Ill. App. 3d 319, 348 (1992) (a trial court may not penalize a defendant for choosing to exercise his right to stand trial, but "the mere fact that the defendant was given a greater sentence than that offered during the plea bargaining does not, in and of itself, support an inference that the greater sentence was imposed as a punishment for demanding trial"). However, we find this argument unpersuasive where defendant was not sentenced after a trial and, thus, the court did not impose a harsher sentence, *i.e.* a trial tax, to penalize him for exercising his right to stand trial. Rather, as mentioned, defendant pled guilty knowingly and voluntarily.

¶ 22    Moreover, defendant's conclusory allegation that the nine-year sentence was a unilateral offer from the court, and therefore a trial tax, is unsupported. There must be a "clear showing" in the record that the harsher sentence was the result of a trial demand. *Carroll*, 260 Ill. App. 3d at 349. A clear showing is demonstrated when the court makes explicit remarks concerning the harsher sentence or where the sentence imposed is "outrageously higher" than that offered during plea negotiations. *Id.* No such explicit remarks occurred on the record here and defendant's sentence was not outrageously higher than that offered in the first plea conference. Notably, the record in this case is insufficient to determine what occurred in either conference before jury selection and immediately prior to the plea hearing. Although the parties and the court alluded to negotiations taking place, nothing in the record indicates what happened during those negotiations

or how the nine-year offer originated. See *e.g.*, *People v. Meza*, 376 Ill. App. 3d 787, 790 (2007) (Plea agreements are between parties, not the judge and defendant); see also, *e.g.*, *People v. Henderson*, 211 Ill. 2d 90, 102 (2004) ("[t]he disposition of criminal charges by agreement *between the prosecutor and the accused*, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice." (Emphasis added.) (quoting *Santobello v. New York,* 404 U.S. 257, 260 (1971)). Thus, we are unable to conclude that the court was responsible for defendant's nine-year sentence, rather than an offer from the State, or that any error occurred at all. See *e.g.*, *In re Marriage of Gulla and Kanaval*, 234 Ill. 2d 414, 422 (2009) ("From the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant."). It is defendant's burden to provide a sufficiently complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 23    Further, in postconviction proceedings, defendant must supply sufficient factual support to show that his claims are capable of independent corroboration (*People v. Collins*, 202 Ill. 2d 59, 67 (2002)), and attach evidence supporting his claim (725 ILCS 5/122-2 (West 2016) (stating that the "petition shall have attached thereto affidavits, records, or other evidence supporting its allegations"). In this case, defendant did neither. Rather than provide affidavits or other supporting evidence to show what occurred during his plea conferences, defendant asks us to assume that his voluntary guilty plea was the result of an impermissible trial tax. This we are unwilling to do.

¶ 24    In sum, where defendant did not dispute in his petition that his plea was knowingly and voluntarily entered, and the record supports the conclusion that it was, he failed to assert a constitutional violation under the Act. Further, the record is insufficient to support his allegations.

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.